[Cite as *State v. Brand*, 2025-Ohio-669.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240376 |
| | | TRIAL NO. B-1402577-A |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N* |
| | | |
| BARON BRAND, | : | |
| | | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Appeal Dismissed In Part

Date of Judgment Entry on Appeal: February 28, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Candace Crear*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Baron Brand*, pro se.

**KINSLEY, Presiding Judge.**

{¶1} Defendant-appellant Baron Brand appeals from the common pleas court's judgment denying his Crim.R. 33(B) motion for leave to file a motion for a new trial. Because we hold that Brand was not unavoidably prevented from discovering the grounds upon which he now relies to support his motion for a new trial, we affirm the lower court's judgment.

## I. Factual and Procedural History

{¶2} In 2015, following a jury trial, Brand was convicted of two counts of aggravated murder, felonious assault, aggravated robbery, accompanying firearm and repeat-violent-offender specifications, and two counts of having a weapon while under a disability. These convictions arose in connection with the shooting deaths of K.B. and B.W. and the felonious assault of C.M. We have previously set forth the facts surrounding Brand's convictions in *State v. Brand*, 2016-Ohio-7456 (1st Dist.), but, for clarity, the facts relevant to this appeal are summarized as follows.

{¶3} At trial, the evidence demonstrated that on the evening of May 2, 2014, C.M. had been at her apartment with her cousin K.B. and, his girlfriend, B.W. K.B. was a known drug dealer and had brought drugs to C.M.'s apartment. C.M. left K.B. and B.W. at her apartment, and she went out with a friend to several bars. Upon returning home in the early morning hours, two men, brandishing handguns, approached C.M. and forced her into her apartment and ordered her to sit on the couch. The lights were on in her apartment. One of the men, later identified as Brand, tied K.B.'s arms behind his back with K.B.'s jogging pants. When Brand and his codefendant could not find any money (K.B. told them he had no money but to take the heroin that was on the table), Brand made a phone call on speakerphone informing a third person that there was no money in the apartment, and that person told Brand

to "kill them." When C.M. heard that, she ran into her bedroom and jumped out the window, but not before being shot in the arm. As she was running to her neighbor's house to call the police, she heard two more gunshots. B.W. and K.B. were each shot in the head and died.

{¶4} Based on unrelated charges, Brand was developed as a suspect in the assault and shooting, and his picture was placed in a photographic lineup. C.M. identified Brand in the photographic lineup and at trial as one of the men who had forced their way into her apartment.

{¶5} Drug paraphernalia as well as copper jacketing and shell casings were found at the crime scene. The police criminalist who testified at trial identified the ammunition as Dynamic Research Technologies ("DRT"), a brand the criminalist had not before encountered. The firearms supervisor from the Hamilton County Coroner's Office examined the casings and opined that they had been fired from a semi-automatic handgun, specifically a Bersa.

{¶6} Evidence was presented to the jury that Brand had been arrested on unrelated offenses on May 8, 2014. As part of that arrest, a search warrant was executed at Brand's residence at 5460 Beechmont Avenue, where he had been staying with a friend. During the search, the police recovered a large amount of heroin, $1900, a .380 Bersa handgun, and a box of DRT .380 cartridges. Brand admitted that those items belonged to him.

{¶7} A jailhouse informant also testified at trial that Brand had told him that a woman had arranged with Brand to set up K.B. for a robbery. Brand told the informant that he had followed the woman home from a club with the intention of taking K.B.'s money and heroin, but chaos erupted in the woman's apartment, and he had shot at the woman as she was jumping out of a window. Brand also said that

before leaving the apartment with the drugs, he had killed K.B. and another witness.

**{¶8}** At trial, Brand maintained his innocence. His defense centered on challenging the reliability of C.M.'s identification, given that there was no physical evidence found at the crime scene connecting him to the shooting. Defense counsel also pointed out to the jury that the gun found in Brand's residence, while similar to the type of gun used in the shootings, was not the murder weapon.

**{¶9}** The jury returned guilty verdicts on the charged offenses on September 22, 2015. A few days prior to the start of his trial, Brand had entered guilty pleas to trafficking in heroin and having a weapon while under a disability in connection with the search of the Beechmont residence on May 8, 2014. The trial court held a sentencing hearing on all the offenses he had been found guilty of (either based upon jury verdicts or guilty pleas) and imposed an aggregate sentence of life in prison.

**{¶10}** Brand unsuccessfully challenged his convictions based upon the jury verdicts in his direct appeal and by postconviction motions filed in 2021 and 2023. *See State v. Brand*, 2016-Ohio-7456 (1st Dist.), *appeal not accepted*, 2017-Ohio-5699; *State v. Brand*, 2022-Ohio-1185 (1st Dist.) (challenging jury-verdict forms), *appeal not accepted*, 2022-Ohio-2047; *State v. Brand*, 2023-Ohio-3321 (1st Dist.) (affirming denial of Crim.R. 33(B) motion for leave to file a new-trial motion).

**{¶11}** In April 2021, Brand filed a motion in the common pleas court seeking an order requiring the State to turn over all exculpatory evidence related to Brand's 2015 convictions. In 2023, his girlfriend was able to obtain the State's case file through a public records request and sent the file to Brand, who then filed two separate postconviction motions on August 14, 2023.

**{¶12}** First, Brand filed a petition for postconviction relief seeking to vacate his convictions based on his guilty pleas. He argues that his pleas were not entered

knowingly, intelligently, or voluntarily because he was misadvised by his trial counsel. He contends that trial counsel advised him to enter guilty pleas because if he did so then the State would agree not to "introduce evidence [at the jury trial] from prior convictions/unrelated charges." Brand now claims that his trial counsel had never reached an agreement with the State to not introduce that other evidence.

{¶13} The State moved to dismiss Brand's petition because it was untimely, and the common pleas court lacked jurisdiction to consider it. The court agreed and dismissed Brand's petition on February 15, 2024. There is no notation on the docket by the clerk of courts that this entry was mailed to the parties.

{¶14} Next, Brand moved for leave, under Crim.R. 33(B), to file a motion for a new trial based on an irregularity in the proceedings and newly discovered evidence. He supplemented this motion twice before the common pleas court ruled on it. He contends that he had no knowledge of the grounds he now relies upon to support his motion for a new trial until he received the prosecutor's case file in August 2023.

{¶15} In support of his motion, Brand attaches two laboratory reports analyzing DNA recovered from the crime scene and from the residence where he had been staying on May 8, 2014, a page from a website discussing the amount of DRT ammunition produced on a yearly basis, the affidavits underlying the search warrant for the Beechmont residence, an incident report related to the search warrant, the complaints filed in municipal court charging the offenses he was eventually convicted of as well as the underlying affidavits, and notes from police interviews with C.M., her aunt, the jailhouse informant, and Brand's girlfriend. Brand claims that all this evidence is newly discovered and demonstrates an irregularity in the jury trial proceedings.

{¶16} As best we can ascertain, Brand contends that the irregularity at trial

was that his convictions were based on evidence presented by the State that was unrelated to the charges before the jury. Essentially, Brand believes that the jury found him guilty because of the evidence found during the search of the Beechmont residence on May 8, and not because of C.M.'s identification of him as one of the assailants and the jailhouse informant's testimony incriminating Brand. Brand points out that the laboratory reports indicate that his DNA was not found on the jogging pants used to tie up K.B. Further, he points out that the bag of alleged drugs found at C.M.'s apartment contained K.B.'s DNA, but not Brand's, and the bags of drugs found at Brand's Beechmont residence contained his DNA but not K.B.'s. Brand argues that this shows that he was not the one to steal drugs from C.M.'s apartment.

{¶17} Further, Brand contends that the affidavit underlying the search warrant for the Beechmont residence demonstrates that the police had no basis for searching the residence. He argues that this affidavit was suppressed and that he was denied the opportunity to cross-examine the affiant at trial.

{¶18} Lastly, Brand maintains that the notes from the police interview with C.M.'s aunt demonstrate that C.M. was covering for her boyfriend, who Brand believes was involved in the shooting and assault. Brand also argues that the notes from the police interview with the jailhouse informant reveal that the informant perjured himself during his testimony at trial.

{¶19} Brand moved for summary judgment on his Crim.R. 33(B) motion, which the common pleas court denied. Brand appealed from that judgment, but this court dismissed his appeal for lack of a final appealable order. Then, Brand moved the common pleas court to enter a final appealable order on both his Crim.R. 33(B) motion for leave to file a new-trial motion and on his petition for postconviction relief. On June 13, 2024, the common pleas court journalized an entry with respect to the

Crim.R. 33(B) motion only, denying it. Brand now appeals that judgment, bringing forth four assignments of error.

## II. Analysis

### A. Crim.R. 33(B) motion

**{¶20}** In his first assignment of error, Brand maintains that the common pleas court abused its discretion in denying his Crim.R. 33(B) motion. We disagree.

**{¶21}** A motion for a new trial based on an irregularity in the proceedings must be filed within 14 days of the verdict and a motion for new trial based on newly discovered evidence must be filed within 120 days of the verdict, "unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for new trial . . . ." Crim.R. 33(B). "Unavoidably prevented" means "the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *State v. McKnight*, 2021-Ohio-2673, ¶ 11 (4th Dist.), citing *State v. Walden*, 19 Ohio App.3d 141, 145-146 (10th Dist. 1984). A defendant may satisfy the unavoidable-prevention standard by establishing that the prosecution suppressed the evidence on which the defendant would rely in seeking a new trial. *State v. Howard*, 2022-Ohio-2159, ¶ 30 (1st Dist.). But "[m]ere conclusory allegations do not prove that the defendant was unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial." *See State v. Cashin*, 2017-Ohio-9289, ¶ 17 (10th Dist.).

**{¶22}** We review the common pleas court's ruling on a motion for leave to file a motion for a new trial under an abuse of discretion standard. *State v. Hatton*, 2022-Ohio-3991, ¶ 29.

**{¶23}** The jury returned guilty verdicts in Brand's trial in September 2015, eight years before Brand filed his most recent Crim.R. 33(B) motion. After reviewing the record before us, we hold that Brand has not demonstrated how, using reasonable diligence, he was unavoidably prevented from discovering the grounds supporting his motion for a new trial until recently.

**{¶24}** With respect to the laboratory reports demonstrating that Brand's DNA was not found at the homicide crime scene and that the gun found at the Beechmont residence was not the murder weapon, we note that these reports were discussed at trial and admitted into evidence as exhibits. And the charging documents that Brand attached to his motion were filed with the clerk of courts and have been part of the record since prior to the start of Brand's trial. Additionally, the record shows that a day before trial was to begin, the State released the identity of the jailhouse informant, and the defense acknowledged receiving the informant's statement and accompanying notes. Thus, this alleged newly discovered evidence was readily available to Brand during the applicable timeframe to file a motion for a new trial.

**{¶25}** Turning to the affidavit underlying the search warrant authorizing the search of the Beechmont residence, the incident report related to the warrant, the affidavits underlying the charging documents, and the detective's notes memorializing interviews with witnesses, we note that it is unclear from Brand's motion whether he is arguing that all of this evidence was suppressed in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), or whether only the search warrant affidavit was suppressed. To the extent that he is arguing all this information was suppressed, we determine that Brand's mere conclusory allegation that these items were suppressed is not enough to demonstrate by clear and convincing proof that he was unaware of these items or the information they contained at trial or during the applicable timeframe to file a motion

for a new trial. *See Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (recognizing that it is irrelevant that the government had maintained no record of what was handed over to defense because "the burden remains on [defendant] to prove that the evidence was not disclosed to him"). There is no affidavit from trial counsel indicating that the defense was unaware of this information at the time of trial, nor does Brand attest in his affidavit that he reached out to trial counsel to even attempt to determine what information was available to the defense during the trial. Further, defense counsel acknowledges on the record that its own investigator met with C.M. prior to trial, and in the process of tracking down C.M., C.M.'s aunt. Brand has simply not met his burden to demonstrate that this evidence he now relies upon was not disclosed to the defense. Additionally, we note that most of the evidence attached to Brand's motion does not qualify as *Brady* material because it does not contain exculpatory evidence. Finally, to the extent that Brand is not arguing that all of the information was suppressed but instead was newly discovered, we note that Brand has not set forth any efforts he took during the applicable time frame following the return of the jury verdicts to obtain the evidence he now relies upon. *See Cashin*, 2017-Ohio-9289, at ¶ 16 (10th Dist.).

**{¶26}** Finally, with respect to the information from a website demonstrating the amount of ammunition produced by DRT on a yearly basis, Brand has not demonstrated or even discussed how, by using reasonable diligence, that he could not have accessed that information at trial or soon thereafter. Brand's own affidavit indicates that he did not begin searching for evidence to support his motion for a new trial until 2021, almost six years past the 14-day or 120-day timeframe for filing such a motion.

**{¶27}** Because Brand has not met the unavoidable-prevention standard with

clear and convincing proof, we cannot say that the common pleas court abused its discretion by denying his Crim.R. 33(B) motion for leave to file a motion for a new trial. Accordingly, his first assignment of error is overruled.

### B. *No jurisdiction to considering remaining assignments*

**{¶28}** In his second assignment error, Brand argues that the common pleas court erred by denying his R.C. 2953.21 petition for postconviction relief and his Crim.R. 32.1 motion to vacate his guilty pleas to trafficking in heroin and having a weapon while under a disability, the offenses arising from the search of his Beechmont residence. We may not consider this assignment for two reasons. First, Brand did not file a Crim.R. 32.1 motion to vacate his guilty pleas in the common pleas court. Second, we do not have jurisdiction to consider his challenge to the denial of his petition for postconviction relief. Brand did not appeal from the February 15, 2024 judgment denying his petition;[1] he only appealed from the judgment designated and attached to his notice of appeal, which was the judgment denying his Crim.R. 33(B) motion. *See* App.R. 3(D) and 4(A)(1); *State v. Stevens*, 2015-Ohio-2971, ¶ 8 (2d Dist.) ("[A]n appellate court lacks jurisdiction to review a judgment or order that is not designated in the appellant's notice of appeal."). Accordingly, the second assignment of error is dismissed.

**{¶29}** With respect to Brand's third and fourth assignments of error, which respectively contend that he is entitled to a new trial because there was insufficient evidence to support his convictions and because he is actually innocent, we note that these challenges go to the merits of his motion for a new trial. Because Brand has not

---

[1] Because a petition for postconviction relief is civil in nature, the time to appeal the dismissal of a petition begins to run only "upon service of notice of the judgment and notation of service on the docket by the clerk of courts." *Clermont Cty. Transp. Improvement Dist. v. Gator Milford, L.L.C.*, 2015-Ohio-241, syllabus; *State v. Young*, 2015-Ohio-774, ¶ 4 (1st Dist.). Because there is no notation on the docket of service, Brand's appeal time has not yet begun to run.

been granted leave to file a motion for a new trial, the merits of his motion for a new trial were not before the common pleas court and thus, are not properly before us. *See Hatton*, 2022-Ohio-3991, at ¶ 33. Accordingly, we dismiss Brand's third and fourth assignments.

### III.    Conclusion

**{¶30}** Having overruled Brand's first assignment of error and dismissed the remaining assignments of error, we affirm the judgment of the trial court denying Brand's Crim.R. 33(B) motion.

Judgment affirmed and appeal dismissed in part.

**CROUSE** and **BOCK, JJ.,** concur.


Please note:

The court has recorded its entry on the date of the release of this opinion.